**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

VALERY LATOUCHE,

                            Plaintiff,

            - v -                                                    Civ. No. 9:09-CV-308
                                                                           (NAM/RFT)

MICHAEL C. TOMPKINS, *Correctional Officer, Clinton*
*Correctional Facility*; DEAN E. LECLAIR,[1] *Correctional*
*Officer, Clinton Correctional Facility*; JEFFREY R. LUDWIG,
*Sergeant, Clinton Correctional Facility*; MICHAEL B. KING,
*Sergeant, Clinton Correctional Facility*; D. MASON*, Correctional*
*Officer, Clinton Correctional Facility*; B. MALARK, *Correctional*
*Officer, Clinton Correctional Facility*; JOHN REYELL, *Correctional*
*Officer, Clinton Correctional Facility*; JOHN DOE, *Correctional*
*Officer–Gallery Officer Company Upper F-6*; JOHN DOE, *Mess Hall*
*Supervising Correctional Officer*; BOB FITZGERALD, *Registered*
*Nurse, Clinton Correctional Facility*,

                            Defendants.

**APPEARANCES:**                                      **OF COUNSEL:**

VALERY LATOUCHE
05-A-5812
Plaintiff, *Pro Se*
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

HON. ERIC T. SCHNEIDERMAN                         KRISTA A. ROCK, ESQ.
Attorney General of the State of New York         Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE, United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Valery Latouche brings this civil rights action, pursuant to 42 U.S.C. § 1983,

claiming that, while incarcerated at Clinton Correctional Facility, his Eighth Amendments rights

were violated as a result of a physical altercation with Defendants Michael C. Tompkins, Dean E.

_____

        [1] As evidenced by the Defendants' submissions, the correct spelling of this Defendant's name is "LaClair" and
the Court will refer to him as such.  *See, e.g.,* Dkt. Nos. 12 & 25.

LaClair, Jeffrey R. Ludwig, Michael B. King, Dennis Mason, Benjamin Malark, and John Reyell;

he further asserts that he received inadequate medical treatment from Defendant Bob Fitzgerald.

Dkt. No. 1, Compl.  Defendants now move for summary judgment, pursuant to Fed. R. Civ. P. 56,

which Plaintiff opposes.  Dkt. Nos. 46 & 53.  For the reasons that follow, it is recommended that the

Defendants' Motion be **GRANTED IN PART** and **DENIED IN PART**.

## I.  FACTS[2]

### A.  Defendants' Version of Events

Shortly before noon on January 3, 2009, Defendants Tompkins and LaClair, both of whom

are Correctional Officers at Clinton, were supervising inmates returning to the Upper F Block after

working in the messhall.  Dkt. No. 46-1, Defs.' Statement Pursuant to Rule 7.1(a)(3) [hereinafter

Defs.' 7.1 Statement] at ¶ 4.  The returning inmates were to be locked in their cells.  *Id.*  Plaintiff

Latouche refused to be locked in his cell and, instead, punched Defendant Tompkins in the face as

Defendant Tompkins was counseling him for refusing to lock into his cell.  *Id.* at ¶¶ 5-7.  Defendant

Tompkins activated his personal alarm, leading to the initiation of a Level Two emergency response.

*Id.* at ¶ 8.  A Level Two response, the most serious level at Clinton, is used in emergency situations,

such as when there is an assault on a staff member.  *Id.* at ¶ 9.  When a Level Two response is in

progress "the facility is locked down and only security personnel may move through the facility."

---

[2] Plaintiff's Opposition papers filed in response to the Defendants' Motion for Summary Judgment fails to comport with the requirements of the Local Rules for the Northern District of New York.  *See* N.D.N.Y.L.R. 7.1(a). Although Plaintiff submitted a 7.1 Statement as required, the statement does not "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." N.D.N.Y.L.R. 7.1(a)(3).  Further, when Plaintiff denies an assertion, he fails to "set forth a specific citation to the record where the factual issue arises," which Local Rule 7.1(a)(3) requires.  However, because Plaintiff is proceeding *pro se*, the Court will not deem admitted any fact that Plaintiff has denied in his Complaint or Opposition to the Defendants' 7.1 Statement.  *See Williams v. Calidonna*, 2008 WL 4693160, at *2 (N.D.N.Y. Sept. 11, 2008); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding that a district court has broad discretion in determining whether to overlook a party's failure to comply with local court rules) (citation omitted).

*Id.* at ¶ 10.

A use of force against Plaintiff ensued as Defendant LaClair assisted Defendant Tompkins. *Id.* at ¶ 11. Plaintiff continued to resist as Defendant Tompkins used both arms to grab Plaintiff around his torso. *Id.* at ¶ 12. Plaintiff grabbed Defendant Tompkins' shoulders, prompting Defendant LaClair to use both arms to grab Plaintiff around the waist. *Id.* at ¶¶ 13-14. Using those body holds, Defendants Tompkins and LaClair forced Plaintiff to the floor head first. *Id.* at ¶ 15.

Plaintiff continued to struggle and resist while down on the floor. *Id.* at ¶ 16. Defendant Tompkins placed Plaintiff's right arm in the small of Plaintiff's back. *Id.* at ¶ 17. Defendant LaClair did the same with Plaintiff's left arm. *Id.* at ¶ 18. The use of force ended when Plaintiff stopped struggling after he was handcuffed by Defendant LaClair. *Id.* at ¶ 19-20. After Defendants Tompkins and LaClair helped Plaintiff get up off the floor, Defendants Michael B. King, Jeffrey R. Ludwig, Benjamin Malark, and Dennis Mason arrived to supervise Plaintiff while Defendants Tompkins and LaClair went to the infirmary. *Id.* at ¶¶ 23- 24.

Defendant Ludwig, a Correction Sergeant, ordered Defendants Mason and Malark to take control of Plaintiff and escort him to Clinton's hospital for a medical examination. *Id.* at ¶ 34. Defendant Ludwig supervised Defendants Mason and Malark as they all escorted Plaintiff to the emergency room located on the hospital's first floor. *Id.* at ¶ 35. Plaintiff walked to the hospital on his own and without complaint. *Id.* at ¶ 37. During the escort, Defendants neither used force nor threatened Plaintiff in any way. *Id.* at ¶¶ 38-39.

Defendant Bob Fitzgerald examined Plaintiff. *Id.* at ¶ 40. In response to Defendant Fitzgerald's inquiry, Plaintiff said he "hit the officer first," and that he "was hurt when [he] was subdued." *Id.* at ¶ 43. Defendant Fitzgerald completed an Inmate Incident Report that memorialized

Plaintiff's statements, and Plaintiff signed the report to indicate that he agreed with the statements. *Id.* at ¶¶ 44-45.

Plaintiff's "injuries were consistent with the take down that officers were required to perform on [Plaintiff] after he assaulted an officer and resisted being subdued." *Id.* at ¶ 57. During the examination Plaintiff denied that he was dizzy, and Plaintiff was aware of both the time and location. *Id.* at ¶¶ 47-48. Plaintiff's pupils were equal and reactive and he showed no deformities nor injuries on his head, jawline, or teeth. *Id.* at ¶¶ 50-51. Plaintiff also denied having a headache, but said that he had pain from the "bump on [the] right and left side of [his] face." *Id.* at ¶¶ 52-53. He did not "report any other injuries." *Id.* at ¶ 54. Plaintiff had no broken bones and did not require stitches. *Id.* at ¶ 55. The right side of Plaintiff's brow area had a four-to-five centimeter bruise. *Id.* at ¶ 56. The left side of Plaintiff's brow area also had a bruise measured at four-to-five centimeters long. *Id.* The site of that bruise contained a two-to-three centimeter abrasion that was bleeding lightly. *Id.* Finally, there was a small scratch on the Plaintiff's left nostril. *Id.* Defendant Fitzgerald completed an Addendum to the Use of Force Report that memorialized the examination. *Id.* at ¶ 46.

Defendant Fitzgerald cleaned and disinfected the bruises on Plaintiff's face with peroxide, saline, and Bacitracin (an antibiotic ointment), which was the "standard practice and treatment" for Plaintiff's injuries. *Id.* at ¶¶ 58-60. By the time that Defendant Fitzgerald had finished treating Plaintiff, the abrasion on Plaintiff's face had stopped bleeding. *Id.* at ¶ 61. Throughout the treatment, Plaintiff appeared calm, cooperative, and alert. *Id.* at ¶ 62. He did not appear fearful. *Id.* at ¶ 63.

After Defendant Fitzgerald finished treating Plaintiff's injuries, he returned custody of the Plaintiff to the escorting officers, who escorted Plaintiff to the facility's Special Housing Unit

("SHU"). *Id.* at ¶¶ 64-65. Defendant Reyell's involvement with Plaintiff on January 3rd was limited to recording the escort of the Plaintiff from the infirmary. *Id.* at ¶¶ 75-76. Defendants did not harm, threaten, nor coerce Plaintiff in any way as they escorted him to the SHU. *Id.* at ¶ 77.

Later that day, Defendant Tompkins wrote an inmate misbehavior report charging Plaintiff with assaulting staff, refusing a direct order, and violating lock-in procedures. *Id.* at ¶ 29. Defendant LaClair endorsed this report. *Id.* A Tier III Disciplinary Hearing was held on January 8, 2009, wherein, at the conclusion, Plaintiff was found guilty of the three charges. *Id.* at ¶¶ 30-31.

Between January 3, 2009, and February 17, 2009, Plaintiff sought medical attention from Clinton medical staff on five separate occasions. *Id.* at ¶ 70. He complained of dry and itchy skin, eczema, and feet calluses. *Id.* After January 3, 2009, Plaintiff neither complained of nor sought help for any injury he allegedly suffered from the use of force. *Id.* at ¶ 71.

### B. Plaintiff's Version of Events

At approximately 2:00 p.m. on December 28, 2008, Defendant Tompkins, who was conducting an inmate count, saw a blanket hanging on the bars of Plaintiff's cell. Compl. at p. 7[3]; Dkt. No. 53, Pl.'s Opp'n Br. at p. 2. Defendant Tompkins shouted that the blanket was to "stay down." Compl. at p. 7; Pl.'s Opp'n Br. at p. 2. The next day Plaintiff was issued a misbehavior report for the following charges: disobeying a direct order, harassment, obstructing visibility, and delay of count. Compl. at p. 8; Pl.'s Opp'n Br. at p. 2. Plaintiff pleaded guilty of obstructing visibility and not guilty to all other charges. Compl. at p. 8; Pl.'s Opp'n Br. at p. 3. Plaintiff was found guilty of obstructing visibility and was sentenced to fifteen days of keeplock, with ten days suspended. Compl. at p. 8; Pl.'s Opp'n Br. at p. 3. He was released from keeplock on January 2,

---

[3] All references to page numbers in the Complaint (Dkt. No. 1) will be to the page numbers assigned by the Court's electronic docketing system.

2009.  Compl. at p. 8; Pl.'s Opp'n Br. at p. 3.

On January 3, 2009, while working in the mess hall, a correctional officer warned Plaintiff that he "should be cautious" because Defendant Tompkins was "searching for him."  Compl. at p. 9; Pl.'s Opp'n Br. at p. 4.  At approximately 11:55 a.m., after returning from the mess hall, Plaintiff was unable to enter his cell because his cell was closed.  Compl. at p. 9; Pl.'s Opp'n Br. at p. 4.  Plaintiff shouted that his cell was not open.  A correctional officer responded "I know!"  Compl. at p. 10; Pl.'s Opp'n Br. at p. 4.  Defendant Tompkins then called for Plaintiff to approach the gate.  Compl. at p. 10; Pl.'s Opp'n Br. at p. 4.  A number of other officers, including Defendant LaClair, were with Defendant Tompkins.  Compl. at p. 10; Pl's Opp'n Br. at p. 5.  Defendant Tompkins then said to Plaintiff, "You beat the ticket."  Compl. at p. 10.  Before Plaintiff could respond, Defendant Tompkins added, "Now your cocky" [*sic*].  *Id.*  Plaintiff said "not really I never claimed to be," prompting Defendant Tompkins to slap Plaintiff across the face.  *Id.* at p. 11; Pl.'s Opp'n Br. at p. 5.  Defendant Tompkins then grabbed Plaintiff's torso and threw Plaintiff into the control booth.  Compl. at p. 11; Pl.'s Opp'n Br. at p. 5.  As the two struggled, Defendant LaClair grabbed Plaintiff's lower torso.  Compl. at p. 11; Pl's Opp'n Br. at p. 5.  Defendants Tompkins and LaClair then attempted to drag Plaintiff into the shower.  Compl. at p. 11; Pl.'s Opp'n Br. at p. 5.

When they failed to drag Plaintiff into the shower, Defendants Tompkins and LaClair pulled Plaintiff to the floor.  Compl. at p. 11; Pl.'s Opp'n Br. at p. 5.  By this time, Defendants Ludwig, King, Mason, Malark, and Reyell had arrived.  Compl. at p. 11.  Defendants Mason, Malark, and Reyell joined in the assault as their supervisors, Defendants Ludwig and King, looked on.  *Id.*; Pl.'s Opp'n Br. at p. 5.

After Defendant Tompkins saw a puddle of blood on the floor he shouted, "Pull him up

nothing happen [sic] here." Compl. at p. 11; Pl.'s Opp'n Br. at p. 6. Plaintiff was then dragged to a corridor where Defendants continued kicking his head and body. Compl. at pp. 11-12; Pl.'s Opp'n Br. at p. 6. After Defendant Mason handcuffed Plaintiff, Defendants Mason, Malark, Ludwig, and King escorted Plaintiff to the infirmary. Compl. at p. 12; Pl.'s Opp'n Br. at p. 6. The assault continued during this escort. Compl. at 12; Pl.'s Opp'n Br. at 6.

As they approached a surveillance camera, Defendant Mason lowered himself to Plaintiff's ear and whispered "Say you fuck up nigger." Compl. at p. 12; Pl.'s Opp'n Br. at p. 6. When Plaintiff refused, Defendant Mason struck Plaintiff on the back of the head and punched his stomach. Compl. at p. 12; Pl.'s Opp'n Br. at p. 7. Defendant Malark then grabbed Plaintiff's throat and held on until Plaintiff stated he couldn't breathe. Compl. at p. 12; Pl's Opp'n Br. at p. 7. Defendant Malark punched Plaintiff in the stomach after Plaintiff blocked Defendant Malark's punches to Plaintiff's face. Compl. at p. 12; Pl.'s Opp'n Br. at p. 7. Defendant Mason then whispered, once again, "Say you fuck up." Compl. at pp. 12-13; Pl.'s Opp'n Br. at p. 7. After Plaintiff complied, Defendant Mason violently pushed Plaintiff's head down to prevent the surveillance from capturing his face. Compl. at p. 13; Pl.'s Opp'n Br. at p. 7.

Once they arrived at the infirmary, Plaintiff was shoved into a doctor's office and was ordered to sit on the bed. Compl. at p. 13; Pl.'s Opp'n Br. at p. 7. As Defendant Ludwig was searching for a camcorder and camera, Defendant Mason punched the back of Plaintiff's head. Compl. at p. 13; Pl.'s Opp'n Br. at p. 7. Defendant Fitzgerald then entered the room to check on Plaintiff's wounds. Compl. at p. 13; Pl.'s Opp'n Br. at p. 8. After Defendant Fitzgerald left the room to retrieve supplies, Defendant Mason asked Plaintiff what he would say when Defendant Fitzgerald returned. Compl. at p. 13; Pl.'s Opp'n Br. at p. 8. When Plaintiff refused to respond,

Defendant Mason punched Plaintiff in the head and repeated his question.  Compl. at p. 13; Pl.'s Opp'n Br. at p. 8.  Plaintiff replied "I don't know," and Defendant Mason attempted to punch Plaintiff again.[4]  Compl. at p. 13.  Defendant Mason waited for a second before slapping Plaintiff on the back of the head.  *Id*. at p. 14.

After Defendant Fitzgerald returned, Defendant Mason whispered to Plaintiff "[Say] I hit the officer first and was hurt when I was subdued."  *Id*. at p. 14; Pl.'s Opp'n Br. at p. 8.  Correctional Officer R. Rock,[5] who was taking pictures of the injuries, pointed to Plaintiff's bloody shirt.  Compl. at p. 14.  Defendant Mason then removed the shirt and discarded it.  *Id.*  Defendant Fitzgerald treated Plaintiff's cuts and wounds with petroleum jelly.  *Id.*  After the camcorder was turned on, Defendant Fitzgerald asked the Plaintiff what had happened.  *Id.*  Out of fear and nervousness, Plaintiff said "I hit the officer first and I was hurt when I was subdued."  *Id.*  Plaintiff unwillingly signed a document indicating that he had made that statement.  *Id.*  Defendants then escorted Plaintiff to the SHU where Sergeant Hicks[6] advised Plaintiff to keep quiet.  Compl. at p. 15; Pl.'s Opp'n Br. at p. 8.

The next day, Plaintiff suffered soreness and pain, and completed a sick call request.  Compl. at p. 15.  Sergeant Hicks denied this request and likewise ordered the sick call nurse to disregard Plaintiff's request.  *Id.*

---

[4] There is a discrepancy here between the Statement of Facts in the Complaint and the Statement of Facts in Plaintiff's Opposition Brief.  In his Opposition Brief, Plaintiff states that Defendant Mason was able to punch Plaintiff. Pl.'s Opp'n Br. at p. 8.

[5] R. Rock is not a party to this action.

[6] Sgt. Hicks is not a party to this action.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant.  FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.  *Scott v.*

*Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B. Eleventh Amendment Immunity

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'"

*Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)).  Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. at 98-101; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984).  To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state."  *Rourke v. New York State Dep't. of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

Here, all Defendants are DOCS employees.  Defs.' 7.1 Statement at ¶ 2 (noting that at all times relevant to the actions complained of in this action, each Defendant was employed by DOCS).  Therefore, the as state officials, Defendants cannot be sued in their official capacities in a claim for money damages.  However, Plaintiff may seek monetary damages from them in their individual capacities.  Further, Plaintiff may sue the Defendants for declaratory and injunctive relief in both their individual and official capacities because "official-capacity actions for prospective relief are not treated as actions against the State."  *Cruz v. Gomez*, 202 F.3d 593, 595 n.2 (2d Cir. 2000) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)).

Plaintiff has made it clear that he is suing Defendants in their individual capacities, and not

*-11-*

in their official capacities as employees of the State of New York. Pl.'s Opp'n Br. at 10. To the extent that Plaintiff's Complaint suggests otherwise, I recommend that Defendants' Motion for Summary Judgment be **granted** to the extent claims for monetary relief are asserted against them in their official capacities.

## C. The *Jeffreys* Exception

Defendants argue that the Court should apply the "narrow exception" from *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) and find that Plaintiffs' entire Complaint is implausible or not credible. Defs.' Mem. of Law at pp. 16-19. Ordinarily, credibility determinations are the province of a jury, not a judge. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Under the *Jeffreys* exception, however, the Second Circuit has held that in the "rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete," the court may appropriately conclude at the summary judgment stage that no reasonable jury would credit the plaintiff's testimony. *Jeffreys v. City of New York*, 426 F.3d at 554. "Under these circumstances, the moving party must still meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." *Id.* at 554 (citing *Fischl v. Armitage*, 128 F.3d 50, 56 (2d Cir. 1997)).

First, for the *Jeffreys* exception to apply, the plaintiff must rely "almost exclusively on his own testimony." *Id.* Here, Plaintiff relies on the allegations contained in his certified Complaint and his deposition testimony, suggesting that the *Jeffreys* exceptions may be applicable.

Second, for the *Jeffreys* exception to apply, the plaintiff's testimony must be "contradictory or incomplete." *Id.* In *Jeffreys*, the plaintiff alleged that during the course of his arrest, police officers beat him and threw him out of a third story window. *Id.* at 551. Jeffreys, however, had

*-12-*

confessed on at least three separate occasions that he jumped out of the window. *Id.* at 552. His first public statement regarding his excessive force allegations occurred during a conversation held with a prison doctor nine months after the incident allegedly occurred. *Id.* Jeffreys could not identify any of the individuals whom he alleged participated in the attacks nor describe their "ethnicities, physical features, facial hair, weight, or clothing on the night in question." *Id.*

Here, Defendants submit that Plaintiff's account of the alleged events are "entirely contradictory." Defs.' Mem. of Law at p. 17. It is uncontroverted that in responding to an inquiry from Defendant Fitzgerald, Plaintiff said "I hit the officer first" and "I was hurt when I was subdued." Dkt. No. 46-2, Robert Fitzgerald, R.N., Aff., dated Feb. 24, 2010, at ¶ 9 & Ex. B, Inmate Injury Report (docketed as Dkt. No. 46-4). However, in his Complaint, Plaintiff alleges that Defendant Mason slapped him and ordered him to make those statements. Compl. at p. 14. Defendants, on the other hand, maintain that Plaintiff's statements regarding his provocation of force "were credible and sincere." Defs.' Mem. of Law at p. 17; Fitzgerald Aff. at ¶ 23. Their opinion on Plaintiff's state of mind, however, is insufficient to establish that Plaintiff's allegations are "entirely contradictory." Further, the "fear of retribution by Defendants" is a plausible explanation for his response to Defendant Fitzgerald's inquiry. *See Cruz v. Church*, 2008 WL 4891165, at *5 (N.D.N.Y. Nov. 10, 2008); *see also Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir. 1998) ("If there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because of an earlier account that was ambiguous, confusing, or simply incomplete."). This is contrasted with the scenario presented in *Jeffreys* where no explanation was offered as to the diverging accounts Jeffreys made with regard to his altercation with the police. *See Jeffreys v. City of New York*, 426

-13-

F.3d at 552 (noting that the plaintiff told consistent accounts about how he jumped out of the window to 1) medical personnel on the day of the incident, 2) a sergeant during an interview conducted two days after the incident, and 3) "risk screening personnel from the New York City Department of Corrections" seven days after the incident).

Defendants further attempt to analogize this case to *Jeffreys* because LaTouche "cannot identify which individuals participated in the attack, or who did what to him." Defs.' Mem. of Law at p. 17. In support of this proposition, Defendants cite to several statements in Plaintiff's deposition wherein Plaintiff is unable to identify who was involved in the assault. Defs.' Mem. of Law at pp. 17-19 (citing Dkt. No. 46-25, Krista A. Rock, Esq., Decl., dated Mar. 25, 2010, Ex. A, Pl.'s Dep. Tr., dated Nov. 23, 2009, (docketed a Dkt. No. 46-26) at pp. 29-36, 42, 65, & 68-69). Those statements appear to suggest that Plaintiff is unable to identify the individuals involved in the alleged attack. But, after reading the deposition transcript in its entirety, the Court finds that such is not the case. At the deposition, Plaintiff was able to assert the following: 1) Defendant Tompkins "instigated" the use of force and smacked him (Pl.'s Dep. Tr. at p. 59); 2) Defendant LaClair "pulled" him to the ground (Pl.'s Dep. Tr. at p. 60); 3) Defendant Malark "choked" Plaintiff in the hallway (Pl.'s Dep. Tr. at p. 63); 4) Defendant Mason punched Plaintiff in the stomach, slapped his head, and forced him to sign the Inmate Incident Report (Pl.'s Dep. Tr. at pp. 62-63); and 5) Defendant Reyell "tried to cover up the incident," and possibly was present during the assault in the hallway (Pl.'s Dep. Tr. at pp. 64-66). Although Plaintiff is unable to identify some of the individuals who were involved in the assault, Plaintiff's identification of Defendants during his deposition and throughout his Complaint stands in stark contrast to the plaintiff in *Jeffreys* who was unable to identify *any* of the officers involved in the alleged assault. Thus, while Plaintiff's testimony may

be inconsistent and subject to question, "it is not so blatantly false that the Court may simply reject it as a matter of law." *Moore v. Casselberry*, 584 F. Supp. 2d 580, 587 (W.D.N.Y. 2008).

Finally, the Court recognizes that at his deposition Plaintiff identified Defendant Reyell as the one who removed his bloody shirt. Pl.'s Dep. Tr. at p. 64. This is somewhat consistent with his Declaration wherein he states that it was Defendant Reyell and another officer who removed the shirt. Dkt. No. 53, Pl.'s Decl., dated June 24, 2010, at Facts ¶ 22. On the other hand, in his Complaint, Plaintiff states that it was Defendant Mason along with another officer who committed this act. Compl. at p. 14. We make no finding as to whether these sworn statements are entirely inconsistent. Nevertheless, to the extent they are inconsistent, any discrepancy between the Complaint and the deposition testimony "go[es] to the weight . . . accorded to plaintiff's testimony" and is "fair game for argument to the jury, but they are not so egregious as to render plaintiff's testimony unbelievable as a matter of law." *Moore v. Casselberry*, 584 F. Supp. 2d at 587.

As such, the Court recommends **against** deviating from the established rule that issues of credibility are not to be resolved by a court on a motion for summary judgment. Accordingly, it is the province of the jury to determine whether Plaintiff has met his burden of establishing his claim by a preponderance of the evidence. Defendants' request for summary judgment on this basis should, therefore, be **denied**.

### D. Excessive Force

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (cited in *Tramell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003)). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court clarified the standards for

*-15-*

determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]:  whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  503 U.S. at 6-7 (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)).  To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith.  *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotation marks and citations omitted).

Regarding the objective element, we note initially that "a *de minimis* use of force will rarely suffice to state a constitutional claim[.]"  *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (quoted in *Hudson v. McMillian*, 503 U.S. at 10).  However, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se* because in such instances "contemporary standards of decency always are violated."  *Blyden v. Mancusi*, 186 F.3d at 263 (citing *Hudson v. McMillian*, 503 U.S. at 9).  For example, "when a prison guard applies force against a prisoner that poses no reasonable threat simply because the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a per se violation of the Eighth Amendment occurs."  *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 216 (N.D.N.Y. 2001) (citation omitted).

In assessing the objective component, the court should consider the seriousness of the injury,

however, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury;" thus, "the seriousness of the injury is relevant to the Eight Amendment inquiry, but does not end it." *Davidson v. Flynn*, 32 F.3d 27, 29-30 n.1 (2d Cir. 1994) (alterations in original) (quoting *Hudson v. McMillian*, 503 U.S. at 4).

With regard to the subjective component, a court should consider whether the defendant had a wanton state of mind when engaging in the alleged misconduct. To determine whether a defendant acted wantonly or maliciously, several factors should be examined, including

> the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted); *see also Hudson v. McMillian*, 503 U.S. at 7).

### 1. *Defendants Tompkins and LaClair*

At the outset, Defendant's argument that Plaintiff must have suffered more than a *de minimis* injury in order to state a valid Eighth Amendment claim is erroneous. *See* Defs.' Mem. of Law at p. 8. The extent of Plaintiff's injury is but one factor to be considered in assessing whether an excessive force claim may proceed. As noted above, the wanton infliction of pain, by itself, constitutes a *per se* violation of the Eighth Amendment. *See Blyden v. Mancusi*, 186 F.3d at 262-63 (noting that "[t]he key inquiry [in an excessive force claim] is whether the alleged conduct involved unnecessary and wanton infliction of pain") (internal quotation marks and citations omitted); *see also Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000) ("[N]o . . . showing of extreme injury is required when the claim is that prison officials used excessive force[.]") (citation omitted); *Beckford v. Portuondo*, 151 F. Supp. 2d at 216. Even the *de minimis* use of force may violate the Eighth Amendment if the "the use of force is . . . of a sort [that is] repugnant to the conscience of mankind."

*-17-*

*Hudson v. McMillian*, 503 U.S. at 10 (internal citations and quotation marks omitted).

Under Plaintiff's theory of the case, Defendants Tompkins and LeClair used force because they were upset that Plaintiff had beaten a misbehavior ticket.  If true, then such use of force would be malicious and the level of injury allegedly suffered would not be the deciding factor.  *Blyden v. Mancusi*, 186 F.3d at 263 (citing *Hudson v. McMillian*, 503 U.S. at 9).  Given the contrasting version of events, the Court cannot definitively state that Plaintiff could not establish the objective prong of his excessive force claim.

As to the subjective component of the excessive force analysis, Defendants Tompkins and LaClair argue that their use of force was reasonable and necessary to restore order and discipline.  Defs.' Mem. of Law at p. 8.  Plaintiff counters that the use of force was motivated by Defendant Tompkins's anger that Plaintiff was found guilty of only one of the four charges arising from the December 28th Misbehavior Report and that Plaintiff received a suspended sentence.[7]  Pl.'s Opp'n Br. at 12.  The Court disagrees with Defendants' argument that Plaintiff's claim of a retaliatory assault is "belied by the record."  *See* Dkt. No. 56, Defs.' Reply at p. 6.  The transcript from the December 31, 2008 Disciplinary Hearing establishes that although Plaintiff received a fifteen-day sentence, the hearing officer suspended ten of those days.  Dkt. No. 56-2, Krista Rock, Esq., Reply Decl., dated July 28, 2010, Ex. A, Tier II Hr'g Tr. (docketed as Dkt. No. 56-3) at p. 4.  Accordingly, a reasonable juror could conclude that Defendants Tompkins and LaClair assaulted Plaintiff because he had "beaten" the ticket.  Thus, a genuine issue of fact remains as to whether the use of force by Defendants Tompkins and LaClair was reasonable and necessary to restore order and discipline or

---

[7] In his Opposition Brief, Plaintiff characterizes the disposition as a dismissal.  Pl.'s Opp'n Br. at p. 12.  We presume that he is referring to the dismissal of three of the four charges.  The record is clear that Plaintiff was found guilty of one of the charges and not guilty of the other three.  Dkt. No. 53-1, Pl.'s Exs., at p. 40.

if their use of force unnecessary and wanton.

Therefore, it is recommended that summary judgment be **denied** as to Defendants Tompkins and LeClair.

### 2.   *Defendants Mason, Malark, and Reyell*

Defendants Mason, Malark, and Reyell assert they are entitled to summary judgment due to their lack of personal involvement.[8]  Defs.' Mem. of Law at p. 12.  The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1948 (2009).

Defendants Mason, Malark, and Reyell were part of the response team who escorted Plaintiff to the infirmary.  Dkt. No. 46-16, Benjamin Malark Aff., dated Feb. 19, 2010, at ¶¶ 8-9; Dkt. No. 46-18, John Reyell Aff., dated Feb. 20, 2010, at ¶ 5; Dkt. No. 46-19, Dennis Mason Aff., dated Feb. 19, 2010, at ¶¶ 7-8.  They each contend that this escort proceeded without incident, and that they did not use force nor threaten Plaintiff in any way during the escort.  Malark Aff. ¶¶ 9-10; Reyell Aff. ¶¶ 7 & 10; Mason Aff. ¶¶ 8-9.  Defendant Reyell also argues that he did not have any contact with Plaintiff until Plaintiff left the infirmary.  Reyell Aff. ¶¶ 3-10.  Plaintiff admitted at his deposition that no force was used on him after he left the infirmary.  Pl.'s Dep. Tr. at p. 56.  However, Plaintiff alleges that Defendants Malark, Mason, *and* Reyell joined in the assault after they arrived as a part

---

[8] Defendants Ludwig and King also assert a lack of personal involvement.  Defs.' Mem. of Law at pp. 12-15. We address the claims against these Defendants in the subsequent section of this Report-Recommendation and Order. *See infra* Part.II.E.

of the response team.  Pl.'s Opp'n Br. at pp. 6-7 (emphasis added).  He also alleges that the assault

continued during the escort *to* the infirmary.  *Id.* at p. 6 (emphasis added).  Although Plaintiff admits

to saying "I hit the officer first" and "I was hurt when I was subdued" to Defendant Fitzgerald,

Plaintiff alleges that he made this statements only after he was slapped by Defendant Mason due to

Plaintiff's initial refusal to claim fault for the altercation.  *Id.* at p. 8.  Thus, Plaintiff has pled that

Defendants Mason, Malark, and Reyell violated the Constitution through their personal actions, and

there are genuine issues of material fact as to whether their use of force was unnecessary and

excessive when they first arrived at the incident and whether they used force at all when escorting

Plaintiff to the infirmary.  While the medical record before us suggests that Plaintiff suffered only

*de minimis* injuries, as already discussed, he must prove only that Defendants acted wantonly and

in bad faith to cause harm.  *Blyden v. Mancusi*, 186 F.3d at 262-63.

Accordingly, the Court recommends that Defendants' Motion for Summary Judgment  be

**denied** as to Defendants Malark, Mason, and Reyell.

### E.  Failure to Protect

Defendants Ludwig and King move for dismissal of the claims against them due to a lack

of personal involvement.  Plaintiff alleges that Defendants Ludwig and King "[o]bserved the assault

. . . and did nothing to stop or prevent the officers' wrongdoings" nor protect Plaintiff.  Compl. at

p. 17.  He stated at his deposition that he is "suing [Defendants King and Ludwig] because they was

there, they did nothing.  They did not prevent the assault.  They did nothing to stop it, they just

watched.  They was [sic] basically lookouts."  Pl.'s Dep. Tr. at p. 67.  Thus, in accordance with this

Court's obligation to  read *pro se* complaints "liberally, and . . . interpret them to raise the strongest

arguments that they suggest," we find that Plaintiff's allegations against Defendants Ludwig and

King amount to failure to protect claims, not excessive force claims.  *See Burgos v. Hopkins*, 14 F.3d at 790.

A prison inmate has a constitutional right under the Eighth and Fourteenth Amendments to be free from the "unnecessary and wanton infliction of pain." *Hendricks v. Coughlin*, 942 F.2d 109, 112 (2d Cir.1991) (citation omitted).  "The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)); *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) ("Prison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner."); *see also Avincola v. New York State Dep't of Corr. Servs.*, 1998 WL 146280, at *3 (N.D.N.Y. Mar. 27, 1998).

In order to state such a claim, the prisoner must demonstrate that the prison officials "acted with deliberate indifference with respect to his safety or with an intent to cause harm to him." *Hendricks v. Coughlin*, 942 F.2d at 113.  A showing of mere negligence on behalf of the defendants is not enough to state a constitutional claim. *Whitley v. Albers*, 475 U.S. at 319 (cited in *Hendricks v. Coughlin*, 942 F.2d at 113).  The key element of a failure to protect claim is the existence or potential existence of a substantial risk of serious harm and not the actual harm which may or may not ensue. *Farmer v. Brennan*, 511 U.S. at 836.  To prove deliberate indifference, the plaintiff must show that the "official [knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837 (cited in *Ramirez v. Mantello*, 1998 WL 146246, at *2 (N.D.N.Y. Mar. 24, 1998)).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference."  *Id.* (emphasis added).

Further, a supervisor can be held liable when he or she has actual or constructive notice of unconstitutional practices, but similarly acted with gross negligence or deliberate indifference in failing to act. *See Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989). "Such a supervisor may not escape the consequences of his or her failure to act by pleading the doctrine of qualified immunity." *Fossett v. Morris*, 1991 WL 67093, at *3 (S.D.N.Y. Apr. 22, 1991).

Plaintiff argues that Defendants Ludwig and King failed to intervene when the responding officers joined in the assault upon their arrival to the scene and when the responding officers continued the assault during the escort to the infirmary. Pl.'s Opp'n Br. at p. 19. At his deposition, Plaintiff testified that he never saw Defendants King nor Ludwig during the time of the alleged assault, but he saw two sergeants whom he could not identify. Pl.'s Dep. Tr. at pp. 68-69. Defendant King states that he was not a part of the team that escorted Plaintiff to the infirmary. Dkt. No. 46-7, Michael King Aff., dated Feb. 22, 2010, at ¶ 17. Plaintiff placed Defendant King at the scene because Defendant King authored an incident report regarding the use of force by Defendants Tompkins and LaClair. Pl.'s Dep. Tr. at p. 69. In that report, Defendant King stated that he responded to the Level Two alarm. King Aff., Ex. A, King. Mem., dated Jan. 3, 2009 (docketed as Dkt. No. 46-8). As such, Defendant King would have been present when Defendants Mason, Malark, and Reyell allegedly joined in the assault when they arrived as a part of the responding team. Defendant Ludwig admits that he was one of the officers who escorted Plaintiff to the infirmary. Dkt. No. 46-14, Jeffrey Ludwig Aff., dated Feb. 23, 2010, at ¶ 8. Defendant Ludwig contends that the escort proceeded without incident. *Id*. at ¶ 8. However, as already discussed above, there are genuine issues of fact as to whether Defendants Mason, Malark, and Reyell joined in the assault when they first arrived at the scene and whether the escort proceeded without incident.

-22-

If Defendants King and Ludwig stood by as the other officers were beating Plaintiff, then a jury may find that Defendants King and Ludwig were personally involved in the alleged constitutional violation because they exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring.

Accordingly, we recommend that summary judgment be **denied** as to Defendants Ludwig and King.

### F.  Medical Indifference

In his Complaint, Plaintiff alleges that Defendant Fitzgerald "refused to give [him] proper medical care" in violation of his Eighth Amendment rights.  Compl. at pp. 5 & 18.  Yet, in his Opposition Brief to Defendants' Motion for Summary Judgment, Plaintiff "do[es] not debate" Defendants' arguments that he cannot establish a claim of deliberate indifference.  Pl.'s Opp'n Br. at p. 28.  In light of this concession, Defendants argue that summary judgment should be granted on this claim.  Defs.' Reply at p. 3.  However, the non-movant's failure to contest certain claims is not an automatic adjudication in the movant's favor.  *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Summary judgment "may properly be granted *only if* the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'"  *Id.* (citing FED. R. CIV. P. 56(c)) (emphasis added).  Thus, despite Plaintiff's concession, we will analyze whether Defendant Fitzgerald is entitled to summary judgment on Plaintiff's claim of inadequate medical care.

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "[T]he plaintiff must allege conduct that is 'repugnant

to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'"  *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference.  *Farmer v. Brennan*, 511 U.S. at 834-35; *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).  The first prong is an objective standard and considers whether the medical condition is sufficiently serious.  The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted).  Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).  The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness.  *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66.  A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm.  *Farmer v. Brennan*, 511 U.S. at 836.  This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id*. at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*).  Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable

recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

Here, the record indicates that Plaintiff had several bruises and cuts on his face. Dkt. No. 46-2, Robert Fitzgerald Aff., dated Feb. 24, 2010, at ¶ 14. He had a four-to-five centimeter bruise along the left and right sides of his face. *Id.* He also had a two-to-three centimeter cut on the left side of his face that was bleeding lightly and a scratch on his left nostril. *Id.* Photographs taken while Plaintiff was in the hospital confirm those injuries. *Id.*, Ex. D, Photographs, dated Jan. 3, 2009 (docketed as Dkt. No. 46-6). Plaintiff reported that the "only pain" he had was a "bump" on the right and left sides of his face. Fitzgerald Aff. at ¶ 13 & Ex. C, Use of Force Rep. Addendum, dated Jan. 3, 2009 (docketed as 46-5). Without more, such injuries are not objectively sufficiently serious to support a claim of medical indifference. *See, e.g.*, *Bradley v. Rell*, 703 F. Supp. 2d 109, 121-22 (N.D.N.Y. 2010) (dismissing medical indifference claim because headache and blurry vision, swelling and bruising around the head, and abrasion on leg do are not "sufficiently serious to constitute a serious medical condition").

Even if the Court were to construe the objective prong in Plaintiff's favor, his Eighth Amendment claim against Defendant Fitzgerald would nevertheless fail because nothing in the record supports the notion that Defendant Fitzgerald was deliberately indifferent to Plaintiff's injuries. Defendant Fitzgerald cleaned and disinfected Plaintiff's injuries with peroxide, saline, and an antibiotic ointment. Fitzgerald Aff. at ¶ 15. Plaintiff submits that Defendant Fitzgerald "should have done more than paste some cream on my cuts and bruises." Pl.'s Dep. Tr. at p. 70. But "mere

-25-

disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d at 703. "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*

As such, we recommend that Defendant's Motion for Summary Judgment be **granted** as to Defendant Fitzgerald.

### G.  Verbal Harassment

Plaintiff asserts in his Complaint that Defendant Mason verbally threatened him and, through verbal and physical intimidation, forced Plaintiff to lie to Defendant Fitzgerald. Compl. at p. 13. Yet, in his Opposition Brief, Plaintiff concedes that verbal threats are not actionable under § 1983. Pl.'s Opp'n Br. at p. 28.

A claim brought under § 1983 is "not designed to rectify harassment or verbal abuse." *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)); *Aziz Zarif Shabazz v. Picco*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (noting that ordinarily, a claim for verbal harassment is not actionable under § 1983). Moreover, "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. at 474 (internal quotation marks and citations omitted) (cited in *Garrett v. Reynolds*, 2003 WL 22299359, at * 4 (N.D.N.Y. Oct. 7, 2003)). Accordingly, insulting or disrespectful comments directed toward an inmate do not rise to the level of retaliation and thus is not a constitutional violation. *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001) (calling inmate a "rat" is not a constitutional violation).

To the extent that the Complaint alleges that Defendant Mason had verbally threatened Plaintiff, such claims are not actionable under § 1983.  Accordingly, the Court recommends that Defendant Mason be **granted** summary judgment as to the verbal harassment claim.

### H.  Qualified Immunity

Defendants Tompkins, LaClair, King, Ludwig, Mason, Malark, and Reyell argue that they are entitled to qualified immunity.[9]  The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988).  Until recently, courts faced with qualified immunity defenses have applied the procedure mandated in *Saucier v. Katz*, 533 U.S. 194 (2001).  That case set forth a two-pronged approach whereby the court must first decide whether the facts alleged, or shown, make out a violation of a constitutional right. If yes, the court must then decide whether the right at issue was "clearly established" at the time of the alleged misconduct.  *Saucier v. Katz*, 533 U.S. 194 at 201-02.  Recently, however, the Supreme Court softened the rigid approach enunciated in *Saucier*.  *See Pearson v. Callahan*, 555 U.S. 223 (2009).  Now, the *Saucier* two-pronged test is not mandated in terms of the order in which the prongs may be addressed, though the sequence of review may remain appropriate or beneficial.  *Id.* at 818.

The right to be free from the use of excessive force was "clearly established" at the time of the alleged incident.  *See, e.g.*, *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).  As was the duty to

---

[9] Because the Court finds that the claims against Defendant Fitzgerald are without merit, the Court need not decide whether he would be entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

protect inmates from harm.    *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994).   Therefore,

Plaintiff's claims turn on whether Defendants' actions were objectively reasonable.   Because

questions of fact remain as to the actions taken by Defendants with respect to the excessive force

and failure to protect claims, it is recommended that summary judgment on the grounds of qualified

immunity be **denied**.

### I. Doe Defendants

In his Complaint, filed on March 17, 2009, Plaintiff listed two John Doe Defendants: 1) John

Doe, Correctional Officer, Gallery Officer Company Upper F-6; and 2) John Doe, Correctional

Officer, Messhall Supervising Officer.  Compl. at p. 18.   In directing service of the Complaint, this

Court stated the following:

> Plaintiff is advised that the United States Marshals Service can not effect service of
> a summons and complaint on an individual who has not been identified by name.
> Plaintiff is therefore directed to take reasonable steps through discovery to ascertain
> the names of these Defendants.  If Plaintiff fails to ascertain their identities so as to
> permit the timely amendment of the complaint and service of process on these
> individuals, this action will be dismissed as against the unnamed corrections officers.

Dkt. No. 4, Order, dated Mar. 31, 2009, at p. 2.

It appears that at some point during the discovery period, which ended on November 21,

2009, Plaintiff submitted Interrogatories and Admissions for the two John Doe Defendants.  Dkt.

No. 33 at pp. 19-24.   It is not clear what response, if any, Defendants' counsel (to whom the

discovery demands were sent) provided.   Nevertheless, the Court's record is devoid of any attempt

by Plaintiff to amend his Complaint so as to identify the two John Doe Defendants and he makes

no mention of them in his Opposition to Defendants' Motion for Summary Judgment.

Under FED. R. CIV. P. 4(c)(1), the plaintiff is responsible for service of the summons and

complaint for each defendant within a specified time period.   Specifically, the plaintiff must

effectuate service of process within 120 days of the filing of the complaint.  FED. R. CIV. P. 4(m).[10]
Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant.  *Id*.

As of March 31, 2009, Plaintiff was alerted to the potential dismissal of these Doe Defendants should he fail to timely identify them and amend his Complaint to add them as Defendants.  Almost two years have elapsed and Plaintiff has not sought amendment of his Complaint.  It is not clear whether Plaintiff has abandoned his claims against these Defendants. Nevertheless, without a clear statement from Plaintiff, and in light of the genuine issues of material fact with regard to the Eighth Amendment claims, we recommend that the Doe Defendants be **dismissed** from this action without prejudice.  This recommendation is based solely on a failure to timely serve these Defendants.  We make no finding as to the merits of the claims set forth against these Defendants, nor whether as subsequent action could be timely brought against them.

### III.  CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 46) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. **Granted** as to all Defendants regarding claims for official capacity monetary relief;

2. **Granted** as to the medical indifference claims against Defendant Fitzgerald, who should be **dismissed** from this action;

3. **Granted** as to verbal harassment claims against Defendant Mason;

---

[10] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

4.  **Denied** as to excessive force claims against Defendants Tompkins, LaClair, Mason,

Malark, and Reyell;

5.  **Denied** as to failure to protect claims against Defendants Ludwig and King;

and it is further

**RECOMMENDED**, that the Doe Defendants be **dismissed** from this action without

prejudice due to Plaintiff's failure to timely effect service upon them; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties in this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL**

**PRECLUDE APPELLATE REVIEW.**  *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)

(citing *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C.

§ 636(b)(1); FED. R. CIV. P. 6 & 72.

Date:   March 4, 2011
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-30-*